IN THE IOWA DISTRICT COURT IN AND FOR LINN COUNTY

| | |
|---|---|
| JENNIFER S. JENKINS | ) |
| Plaintiff, | ) |
| v. | ) LAW No. 71633 |
| MEDICAL LABORATORIES OF EASTERN IOWA, INC. | ) |
| Defendant. | ) |

### PETITION AT LAW AND JURY DEMAND

COMES NOW, the Plaintiff Jennifer S. Jenkins, and for her cause of action against the Defendant Medical Laboratories of Eastern Iowa, Inc. states:

### PARTIES, JURISDICTION, AND VENUE

1. That Plaintiff Jennifer S. Jenkins is, and at all material times hereto, was a resident of Linn County, Iowa.

2. That Defendant Medical Laboratories of Eastern Iowa, Inc. [hereinafter "Medlabs"] is an Iowa Corporation, whose registered agent is Theodore Townsend, 1026 A Ave. N.E., Cedar Rapids, IA, 52402.

3. Venue in Linn County is appropriate because the alleged illegal employment practices occurred in this county.

4. Damages exceed the statutory limits for small claims court.

5. Plaintiff has exhausted all administrative remedies. A right to sue letter has been issued by the EEOC and the Iowa Civil Rights Commission, and this action has been brought within the ninety (90) day time limit set forth in said Notices.

## FACTUAL ALLEGATIONS

6. Plaintiff Jennifer S. Jenkins began working for Medlabs on or about August 15, 2007 as a full time employee. At all times during her employment, Plaintiff's performance met or exceeded her employer's reasonable expectations.

7. Plaintiff was a medical lab technician. A significant portion of Plaintiff's work in that position involved drawing blood.

8. In April 2009 Plaintiff injured her back at work. Initially she was to alternate between standing and sitting, but ultimately Plaintiff's doctor restricted her to doing seated work only. The change in restrictions was made in approximately March 2010.

9. This restriction made Plaintiff's pain more tolerable, but not her working conditions. Plaintiff was not to do anything that required bending, which prohibited her from doing some of the testing and from drawing blood. This forced Plaintiff's coworkers to pick up the slack.

10. After the restrictions were put in place, Plaintiff Jennifer S. Jenkins began being treated very poorly by her coworkers. Plaintiff would not be spoken to for hours at a time, work related questions were not answered, and Plaintiff was being looked at in a way that she could tell that my coworkers were very upset with her. At times the coworkers would act like Plaintiff was not there. At other times, Plaintiff was snapped at. This made it extremely difficult for Plaintiff to do her job.

11. After being unable to work out the situation with her two coworkers, Plaintiff decided to report the harassment that she was being subjected to management. This is consistent with Med Lab's employee handbook, which directs that a person that believes that they are being

mistreated by a coworker needs to talk to someone in management. Such discussions were to be confidential.

12. There was nobody in management that Plaintiff could report harassment to at my worksite.

13. Plaintiff Jennifer S. Jenkins did not believe that the complaint could be made by phone because there would have been no privacy. Even using a cell phone would have required Plaintiff to leave the job site.

14. Plaintiff did not feel that she could have waited until the end of her shift to report the ongoing harassment, and thus on Friday April 9, 2010, Plaintiff clocked out and drove straight to Medlab's main laboratory to report the harassment to her supervisor.

15. Plaintiff reported the harassment to her supervisor, Patricia Goehring. At the end of the meeting, Plaintiff was told by Ms. Goehring that Plaintiff was free to go home for the day. Plaintiff had been ready, willing and able to finish her shift that day.

16. Plaintiff Jennifer S. Jenkins worked on Monday, her next scheduled shift. Plaintiff also reported to work on Tuesday, April 13, 2010. Ms. Goehring showed up after lunch and handed Plaintiff and her coworkers a two page excerpt from the employee handbook. The handout indicated that Medlabs would not allow any employee to "discriminate, harass, annoy or threaten another employee" and that "Employees that feel that they are being mistreated by another employee for any reason needs to talk to a person in a managerial position, and all such discussions will be held confidential."

17. Ms. Goehring then took Plaintiff out in the hallway to discuss matters, but there were too many patients and they had to leave the building to discuss matters in private. Once we

3

got far enough from the work site so that we could talk in private, Ms. Goehring indicated that she was furious that Plaintiff had left the work site to report harassment the prior Friday.

18. Ms. Goehring also indicated that she was concerned about Plaintiff's weight loss and expressed that she was concerned that Plaintiff may have been overmedicated, making Plaintiff overly sensitive.

19. Ms. Goehring further indicated that Plaintiff needed to go to counseling to work on her interpersonal relationships and to find out why Plaintiff was so sensitive.

20. When Plaintiff Jennifer S. Jenkins indicated that she did not need or want to go to counseling, and that she was not going to go to counseling, Ms. Goehring fired Plaintiff.

## COUNT I
## DISABILITY DISCRIMINATION

21. Due to Plaintiff Jennifer S. Jenkins's symptoms associated with her back injury and her perceived psychological problems, Plaintiff was regarded as being disabled within the meaning of the American's with Disabilities Act and the Iowa Civil Rights Act in that Plaintiff was regarded as being substantially limited in engaging in one or more major life activities.

22. Because of Plaintiff's perceived disability, and in response to and in retaliation for Plaintiff's report of harassment, Plaintiff Jennifer S. Jenkins was discharged.

23. Defendant's actions, as described above, which included, but were not limited to ordering Plaintiff to undergo counseling and terminating Plaintiff's employment, were in violation of the Americans With Disabilities Act and Iowa Code § 216.

24. Defendant Medlabs can offer no valid lawful reason for the discriminatory conduct toward Plaintiff, and any proffered reason by Medlabs is merely a pretext for its illegal actions.

4

25. As a result of Defendant's unlawful employment practices, Plaintiff Jennifer S. Jenkins has suffered and will continue to suffer emotional distress and mental anguish, lost front and back pay and loss of enjoyment and of the ordinary pleasures of life.

26. Defendant Medlabs' actions were willful and wanton, and done in malice or in reckless disregard to the rights of Plaintiff, entitling her to exemplary or punitive damages.

## RELIEF

**WHEREFORE**, Plaintiff Jennifer S. Jenkins prays that this Court order judgment against Defendant Medical Laboratories of Eastern Iowa, Inc. and award Plaintiff as follows: 1) back pay for the job position which was foreclosed to her due to the Defendant's illegal actions, 2) front pay, 3) prejudgment interest, 4) damages for all employment benefits she would have received but for the discriminatory practices by the Defendants, 5) an award of compensatory damages including emotional distress, 6) punitive damages, 7) reasonable attorneys' fees costs and expenses incurred in pursuing this action, including expert witness fees, 8) and any other relief this Court deems just, equitable or in the public interest.

## JURY DEMAND

**COMES NOW** Plaintiff Jennifer S. Jenkins, by and through her attorneys, Eells & Tronvold Law Offices, P.L.C., and requests a trial by jury.

> EELLS & TRONVOLD LAW OFFICES P.L.C.
> 1921 51st Street NE
> Cedar Rapids, IA 52404
> Phone #: (319) 393-1020
> Fax #: (319) 393-4000
> E-mail: Matt@eells-tronvold.com
>
> By: _____
> Matt J. Reilly   AT0006541

**ATTORNEY FOR PLAINTIFF**