## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| **JENNIFER S. JENKINS**<br><br>    Plaintiff,<br><br>v.<br><br>**MEDICAL LABORATORIES OF EASTERN IOWA, INC.**<br><br>    Defendant. | **CIVIL CASE No. 1:11-31-LRR**<br><br><br>**MEDICAL LABORATORIES OF EASTERN IOWA, INC.'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Defendant, Medical Laboratories of Eastern Iowa, Inc., ("MedLabs LC"), provides

the following Brief in support of its Motion for Summary Judgment.

### Table of Contents

Introduction ........................................................................................................................1
Factual Background ...........................................................................................................1
Standard for Summary Judgment ...................................................................................4
Legal Analysis ....................................................................................................................5
I.    Jenkins' disability discrimination claims fail as a matter of law...............................5
      A.    Only certain of Jenkins' allegations establish a prima facie case ..................5
            1.    Disability ................................................................................................6
            2.    Adverse employment action ................................................................7
      B.    MedLabs has a legitimate, nondiscriminatory reason for the termination of
            Jenkins' employment.....................................................................................9
II.   Any hostile work environment claim fails as a matter of law..................................12
III.  Jenkins' retaliation claims fail as a matter of law ....................................................16
      A.    Jenkins cannot establish a prima facie case of retaliation ...........................17
            1.    Protected activity ................................................................................17
            2.    Adverse employment action ..............................................................18
      B.    MedLabs has a legitimate, nondiscriminatory reason for the termination of
            Jenkins' employment.....................................................................................18
Conclusion ........................................................................................................................19

## Introduction

This lawsuit arises from a personality conflict that developed among three coworkers who worked at MedLabs' laboratory in Marion, Iowa. The coworkers were understood by management to be friends prior to April 9, 2010, when Plaintiff Jennifer Jenkins reported that she was upset by the way in which she was being treated by two of her coworkers. When MedLabs ordered that the three coworkers address the issue(s) underlying the conflict through the Employee Assistance Program (hereinafter "EAP"), Plaintiff Jenkins refused. As a result, her employment was terminated. Jenkins has now asserted disability discrimination and retaliation claims under the ADA and the Iowa Civil Rights Act. All of her claims should be dismissed as a matter of law.

## Factual Background

MedLabs operates laboratories through the Cedar Rapids metro area. (Facts ¶ 1).[1] All patient care is administered on a walk-in basis. (Facts ¶ 2). The mission of MedLabs is to provide the highest quality of care to patients. (Facts ¶ 7). The staff at MedLabs is expected to conduct themselves in accordance with this mission. Id.

Plaintiff Jennifer Jenkins worked as a medical lab technician for MedLabs, beginning in August 2007. (Facts ¶¶ 8-10). Her place of work was MedLabs' laboratory in Marion. (Facts ¶ 9).

Prior to April 2009, Jenkins was diagnosed with a bulging disk in her lower back. (Facts ¶ 17). When her back condition worsened in April 2009, MedLabs allowed her to use a stool for certain phlebotomy procedures. (Facts ¶¶ 18-19). Jenkins' supervisor

---

[1] References to "Facts" refer to Defendant's Statement of Undisputed Facts, filed simultaneously herewith.

Kristi Paterson even assisted Jenkins in dealing with the third-party administrator regarding her workers' compensation claim. (Facts ¶¶ 21-24).

Jenkins' back condition remained symptomatic, and on March 8, 2010 she was restricted to working in a seated position. (Facts ¶ 25). Jenkins was limited to working in a seated position for less than two (2) weeks, and thereafter she was allowed to work standing. (Facts ¶ 27). During this time, Jenkins' supervisor contacted her physician regarding her condition and how to best accommodate Jenkins. (Facts ¶ 28). Jenkins admits these actions reflect the supervisor's care for her as a person. (Facts ¶ 28).

Jenkins alleges that after she was placed on work restrictions in March 2010, she was subjected to "negative feedback" from two of her coworkers, Beth Schornhorst and Julie Martin. (Facts ¶¶ 30-37, 40). At one time, Jenkins, Schornhorst, and Martin were friendly and were known to socialize outside the office, both individually and with their families. (Facts ¶ 37). Jenkins alleges that after she was placed on work restrictions, Schornhorst and Jenkins either did not respond when she asked them work-related questions or were "short" with her. (Facts ¶¶ 43-4). Jenkins also alleges that they would slam doors. (Facts ¶ 42). Jenkins claims that she felt intimated and a lack of respect. (Facts ¶ 42).

Until the afternoon of Friday, April 9, 2010, Jenkins never asked Schornhorst or Martin whether they were upset with her. (Facts ¶ 45). Jenkins never asked to be transferred from the Marion laboratory. (Facts ¶ 46). In fact, prior to April 9, 2010, Jenkins had never spoken with or emailed any MedLabs representative regarding any concerns regarding the work environment. (Facts ¶ 47).

2

Jenkins alleges that during the morning of Friday, April 9, 2010, Schornhorst was slamming doors and drawers and did not answer Jenkins' work-related question. (Facts ¶¶ 48-49). Jenkins alleges that in the afternoon of the 9th when she asked Schornhorst and Martin why they were upset with her, Schornhurst stated that Jenkins was selfish. (Facts ¶¶ 50-51).

At approximately 1:30 p.m. on the 9th, Jenkins left the Marion laboratory and drove to MedLabs' Cedar Rapids (main) facility where the management personnel are located. (Facts ¶ 66). Jenkins met with her supervisor, Kristi Peterson, as well as MebLabs' lab manager, Pat Goehring. (Facts ¶ 69). Jenkins informed them that she was upset at the way in which she was being treated by Schornhorst and Martin. (Facts ¶ 70). Because Jenkins appeared upset, Goehring suggested that she go home for the remainder of the day, which Jenkins agreed was reasonable. (Facts ¶¶ 73-74).

Jenkins worked without incident with Schornhorst and Martin on Monday, April 12, 2010. (Facts ¶¶ 78-80). Jenkins describes that day as very busy and very quiet. (Facts ¶ 80).

On the afternoon of Tuesday, April 13, 2010, Goehring went to the Marion laboratory. (Facts ¶ 81). Goehring met with Jenkins, Schornhorst and Martin, telling all three that they needed to work professionally to maintain a professional environment. (Facts ¶ 84). Jenkins, Schornhorst and Martin all agreed to work together professionally. (Facts ¶85) Jenkins admits that it was appropriate for Goehring to talk to the three coworkers about professionalism. (Facts ¶ 86). Goehring also told Jenkins, Schornhorst and Martin that they all needed to participate with EAP with the goal being that the

3

counseling would help resolve any issues and allow all to work together without further disputes. (Facts ¶ 87).

After Goehring spoke with the three individuals, Goehring asked to speak with Jenkins alone. (Facts ¶ 88). Goehring and Jenkins went outside of the laboratory to speak further. (Facts ¶ 89). Jenkins alleges that Goehring told her that she was furious that she had left the workplace on Friday, that she was concerned about Jenkins' weight loss, that she believed Jenkins was being overmedicated and was overly sensitive, and that Jenkins needed to go to counseling to work on inter-personnel relationships. (Facts ¶ 90). Jenkins admits that Goehring was unaware that Jenkins had previously been diagnosed with an anxiety condition and that Jenkins had been doctoring for weight loss and suffering from depression. (Facts ¶ 91).

Jenkins informed Goehring that she refused to go to the EAP for counseling. (Facts ¶ 92). In response, Goehring told Jenkins that if she refused to participate in EAP, her employment would cease, and gave Jenkins some additional time to consider this. (Facts ¶¶ 93-95). Because Jenkins insisted that she would not participate in EAP, Jenkins' employment was terminated. (Facts ¶ 94).

**Standard for Summary Judgment**

Summary judgment is warranted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(a).

Legal Analysis

## I.     Jenkins' disability discrimination claims fail as a matter of law.

Jenkins alleges that she was perceived as being disabled and that MedLabs violated the ADA and Iowa law by first ordering her to participate in EAP and then terminating her employment when she refused to participate in EAP. (Petition ¶¶ 19-23). Jenkins has no direct evidence of disability discrimination. See Torgerson v. City of Rochester, 643 F.3d 1031, 1044 (8th Cir. 2011) (direct evidence shows "'a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action") (quoting Thomas v. First National Bank of Wynne, 111 F.3d 64, 66 (8th Cir. 1997)). Therefore, Jenkins' disability claims must be analyzed under the burden-shifting framework of McDonnell Douglas v. Green, 411 U.S. 792 (1973). See Lors v. Dean, 595 F.3d 831, 834 (8th Cir. 2010); Seim v. Three Eagles Communications, Inc., 2011 WL 2149061 at * 2 (N.D. Iowa 2011); Magnussen v. Casey's Marketing Co., 787 F. Supp.2d 929, 942 (N.D. Iowa 2011); Beaves v. City of Dubuque, 801 N.W.2d 33, 2011 WL 1584336 at * 6 (Iowa Ct. App. 2011).

## A.     Only certain of Jenkins' allegations establish a prima facie case.

Under the McDonnell Douglas framework, the plaintiff must first establish a prima facie case of discrimination. See Lors, 595 F.3d at 834; Seim, 2011 WL 2149061 at * 2; Magnussen, 787 F. Supp.2d at 942; Beaves, 801 N.W.2d 33, 2011 WL 1584336 at * 6. Jenkins' allegations for the most part are insufficient to establish a prima facie case.

5

1.    Disability.

The first element of a prima facie case of disability discrimination is that the plaintiff had a disability. See Seim, 2011 WL 2149061 at * 2; Magnussen, 787 Supp.2d at 942; Beaves, 801 N.W.2d 33, 2011 WL 1584336 at * 6.

Jenkins' discrimination claim alleges perceived disability. (Petition ¶¶ 21-22). She alleges that she was perceived as disabled because of her back condition and what she describes as "perceived psychological problems." (Petition ¶ 21).

Under the ADAAA,[2] a disability includes being regarded as having a "physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity," so long as the impairment is not "transitory and minor." See 42 U.S.C. § 12102(1-3).  See also 29 C.F.R. § 1630.2(g)(1)(iii) (explaining that perceived disability "means that the individual has been subjected to an action prohibited by the ADA as amended because of an actual or perceived impairment that is not both 'transitory and minor'"); Iowa Code § 216.2(5) (definition of "disability"); Iowa Admin. Code § 161-8.26(5) (discussing "regarded as" disability).

Jenkins alleges that her back condition dates back to April 2009. (Petition ¶ 8). Thus, for purposes of this Motion only, MedLabs does not dispute that Jenkins' allegations regarding a back condition articulate a disability.

By contrast, Jenkins' allegations regarding perceived psychological problems are insufficient as a matter of law to establish a disability.  Jenkins claims that on April 13,

---

[2] The ADA Amendments Act of 2008 (ADAAA) applies when a claim arises from acts occurring after January 1, 2009. See Seim, 2011 WL 2149061 at * 2 n. 5.

2010, Pat Goehring made comments to her about being overmedicated and oversensitive and needing to work on interpersonnel relationships and that Goerhring expressed concerns about Jenkins' weight loss. (Facts ¶ 90). Even if these allegations are taken as true, they at most suggest a temporary and minor impairment – which does not constitute a disability. See Peters v. Interstate Warehousing, Inc., 2012 WL 10609 at * 9-10 (M.D. Tenn. 2012) (as a matter of law, the plaintiff was not perceived as disabled under the ADAAA even though the employer scheduled rehabilitation to treat the plaintiff's drug addiction and sent the plaintiff home to sleep when he confessed to his addiction). Moreover, Jenkins admits that Goehring was unaware in April 2010 that Jenkins had previously been diagnosed with psychological issues and that Goehring was unaware that Jenkins had been doctoring for weight loss. (Facts ¶ 91). "Disability discrimination claims cannot be based on impairments that the employer knew nothing about, because an employer cannot intentionally discriminate on the basis of an impairment it knows nothing about." See Magnussen, 787 Supp.2d at 947.

2.    Adverse employment action.

A prima facie case of disability discrimination requires proof not only that the plaintiff was disabled but that she was subjected to an adverse employment action because of the disability. See Seim, 2011 WL 2149061 at * 2; Magnussen, 787 Supp.2d at 942; Beaves, 801 N.W.2d 33, 2011 WL 1584336 at * 6.

Adverse employment action is defined as "a tangible change in working conditions that produces a material employment disadvantage." Wilkie v. Department of Health and Human Services, 638 F.3d 944, 955 (8th Cir. 2011) (quoting Clegg v. Ark.

Dep't of Corr., 496 F.3d 922, 926 (8th Cir. 2007)). It "might include termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." Wilkie, 638 F.3d at 955 (quoting Clegg, 496 F.3d at 926). "Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action." Id.

Jenkins' allegations regarding her treatment by her coworkers do not articulate an adverse employment action. See e.g., Josephson v. Kimco Corp., 240 F. Supp.2d 1000, 1010 (S.D. Iowa 2003) ("the silent treatment" by coworkers "is a non-tangible change in working conditions of a type the Eighth Circuit has held does not constitute an adverse employment action"). See also Section II, incorporated herein.

Jenkins alleges that she was ordered to participate in EAP because of her perceived disability. (Petition ¶ 23). Participation in EAP would not have affected Jenkins' salary, changed her future career prospects or otherwise resulted in any employment disadvantage. As a matter of law, MedLabs' requirement that Jenkins participate in EAP does not constitute an adverse employment action. See Wilkie, 638 F.3d 955; Fercello v. County of Ramsey, 612 F.3d 1069, 1079 (8th Cir. 2010) (explaining that the relocation of the plaintiff's office does not constitute materially adverse employment action because it did not render her "unable to complete her duties" or interfere with her employment "to an extent that would deter a reasonable person from making a harassment claim"); Chivers v. Wal-Mart Stores, Inc., 641 F.3d 927, 932 (8th Cir. 2011) (not everything that makes an employee unhappy is actionable); LaCroix v. Sears,

Roebuck, and Co., 240 F.3d 688, 691 (8th Cir. 2001) ("an adverse employment action is exhibited by a material employment disadvantage, such as a change in salary, benefits, or responsibilities"); Stewart v. General Mills, Inc., 2009 WL 350639 at * 13 (N.D. Iowa 2009) (as a matter of law, temporary reassignment does not constitute adverse employment action). Moreover, because participation in EAP was mandatory for all three coworkers at the Marion lab, Jenkins cannot establish that she was required to participate because of her alleged disability.[3] (Facts ¶ 87). Thus, the requirement of participation in EAP cannot establish a prima facie case in this litigation.

Jenkins also alleges that her employment was terminated because of her perceived disability. (Petition ¶ 23). MedLabs acknowledges that termination constitutes an adverse employment action but denies that Jenkins was terminated because of a perceived disability, as explained further below.

In summary, the only allegations sufficient to ostensibly establish a prima facie case of disability discrimination are Jenkins' allegations that her employment was terminated because her back condition was perceived to be a disability. MedLabs denies that Jenkins' employment was terminated because of a perceived disability, as explained further below.

**B.  MedLabs had a legitimate, nondiscriminatory reason for the termination of Jenkins' employment.**

If a plaintiff establishes a prima facie case of discrimination, then the employer must come forward with a legitimate, nondiscriminatory reason for the adverse

---

[3] If anything, requiring all three employees to participate is direct evidence of a lack of discriminatory animus.

employment action. <u>Seim</u>, 2011 WL 2149061 at * 2. If an employer establishes a legitimate, nondiscriminatory reason, then the plaintiff has the burden to establish that the reason was pretext for discrimination. <u>Seim</u>, 2011 WL 2149061 at * 2. To establish pretext, an employee "must both discredit an employer's asserted reason for termination and show that the circumstances permit drawing the reasonable inference that the real reason for terminating the plaintiff was" her protected status. <u>Stewart v. General Mills, Inc.</u>, 2009 WL 350639 at * 14 (quoting <u>Twymon v. Wells Fargo</u>, 462 F.3d 925, 935 (8th Cir. 2006)).

Jenkins' employment was terminated because she refused to comply with the condition of continued employment imposed by MedLabs that the three coworkers at the Marion lab work with the EAP in an effort to eliminate any issue(s) for dispute. (Facts ¶¶ 87, 92-94). An employee's refusal to obey an employer's mandate to participate with the EAP regarding a coworker's dispute is a legitimate, nondiscrimination reason for terminating the individual's employment. <u>See generally</u> <u>Chivers v. Wal-Mart Stores, Inc.</u>, 641 F.3d 927, 932 (8th Cir. 2011) ("We have found that an employer's belief that the employee committed misconduct is a legitimate, non-retaliatory reason for the employer's action") (internal citation omitted); <u>Norman v. Union Pacific Railroad Co.</u>, 606 F.3d 455, 460 (8th Cir. 2010) (as a matter of law, the plaintiff could not establish that she was terminated because of a perceived disability when she failed to submit the requisite work release).

Jenkins is asking this Court to second-guess the correctness of MedLabs' decision to require not just her, but all three (3) of the employees at the Marion lab involved in

the conflict as reported by Jenkins to participate in the EAP in an effort to resolve their differences. Such second-guessing is impermissible. See e.g., Diaz v. Tyson Fresh Meats, Inc., 643 F.3d 1149, 1153 (8th Cir. 2011) (in affirming employer summary judgment on retaliation claim, rejecting argument that was a "back door into the correctness of [the defendant's] personnel decision").

In point of fact, MedLabs had the right to establish the condition of continued employment. All three coworkers were compelled to attend EAP to address Jenkins' allegations regarding the workplace. (Facts ¶¶ 87, 92-94, 96). "Employers are permitted 'to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims.'" Moore v. Lehigh Cement Co., 2011 WL 454499 at * 11 (N.D. Iowa 2011) (quoting Wisbey v. City of Lincoln, 612 F.3d 667, 673 (8th Cir. 2010)).

Jenkins cannot establish that MedLabs' reason for her termination is pretextual. It is significant to note that not only Jenkins, but also her two coworkers Schornhorst and Martin were ordered to participate with the EAP. (Facts ¶87). Schornhorst and Martin did in fact participate as required. (Facts ¶ 96). Like Jenkins, each understood in advance that participating in the EAP process was mandatory if they wished to continue their employment with MedLabs. (Facts ¶87).

There is no reasonable basis for inferring that Jenkins' employment was terminated because of a perceived disability. The fact that MedLabs knew that Jenkins suffered from a back condition alone is not sufficient to establish that it took any action because of the condition. See Nyrop v. Independent School District No. 11, 616 F.3d 728, 736 (8th Cir. 2010) (employer's awareness of physical impairments does not

establish perceived disability); 29 C.F.R. § 1630.2(l)(3) ("Establishing that an individual is 'regarded as having such an impairment' does not, by itself, establish liability"). Moreover, MedLabs had been aware of Jenkins' back condition since at least April 2009, at which time Jenkins began using a stool to perform certain phlebotomy procedures. (Facts ¶¶ 18-19). MedLabs cooperated fully in accommodating work restrictions and even assisted Jenkins in dealing with the third-party administrator with respect to her workers' compensation claim in 2009. (Facts ¶¶ 21-24). No reasonable factfinder would conclude that MedLabs terminated Jenkins because of her back condition in April 2010.

## II.     Any hostile work environment claim fails as a matter of law.

Jenkins' Petition does not expressly articulate a hostile work environment claim. Therefore, she should be precluded from asserting such a claim. See Culpepper v. Vilsack, 664 F.3d 252, 259 (8th Cir. 2011) (if claims "do not appear in the plaintiff's pleadings, they are not properly before the court regardless of whether they were reasonably related to prior allegations found in an administrative charge"). See also L.L. Nelson Enterprises, Inc. v. County of St. Louis, 2012 WL 752334 at * 2 (8th Cir. 2012) (discussing Supreme Court Twombly and Iqbal decisions regarding facial plausibility).

If Jenkins is nonetheless attempting to assert such a claim, and if the Court would allow such a claim, it fails as a matter of law.

To establish a claim of hostile work environment under the ADA, a plaintiff must establish:

1.     She was subject to unwelcome harassment;

2.     The harassment resulted from her membership in the protected class; and

3.     The harassment was severe enough to affect the terms, conditions, or privileges of the employment.

Shaver v. Independent Stave Co., 350 F.3d 716, 720 (8th Cir. 2003); Rensink v. Wells Dairy, Inc., 741 F. Supp.2d 1038, 1059 (N.D. Iowa 2010). See also Kim v. Grand View College, 797 N.W.2d 621, 2011 WL 222515 at * 5 (Iowa Ct. App. 2011) (elements of hostile work environment claim under Iowa law).

Anti-discrimination laws such as the ADA "do not create a general civility code." Shaver, 350 F.3d at 721. "Conduct that is merely rude, abrasive, unkind, or insensitive does not come within the scope of the law." Shaver, 350 F.3d at 721. "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Anderson v. Durham D & M, LLC, 606 F.3d 513, 519 (8th Cir. 2010) (internal citations omitted).

To be actionable, "harassment must be both subjectively hostile or abusive to the victim and 'severe and pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive." Shaver, 350 F.3d at 721 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993). To determine whether conduct is actionable, courts consider the frequency and severity of the conduct, whether it was physically threatening or humiliating, and whether it unreasonably interfered with work performance. See Pye v. Nu Aire, Inc., 641 F.3d 1011, 1018 (8th Cir. 2011).

13

In <u>Shaver</u>, the plaintiff suffered from nocturnal epilepsy. 350 F.3d at 719. A portion of his skull had been replaced with a metal plate. <u>Id.</u> There was "ample evidence" that the plaintiff was "rountinely referred to" in the workplace as "'platehead.'" <u>Id.</u> at 721. Managers had commented that the plaintiff was "too stupid to be promoted or to get another position at the mill" and one coworker even said that he "pissed in his pants when the microwave was on." <u>Id.</u> at 721-3. The Eighth Circuit Court of Appeals affirmed the grant of summary judgment on the hostile work environment claim, noting that the alleged harassment was not "explicitly or implicitly threatening" and that it did not involve "harassing conduct of a physical nature...." <u>Id.</u>

The plaintiff in <u>Rensink</u> had an intellectual disability with an IQ level of 66. 751 F.Supp.2d at 1041. He suffered from periodic migraine headaches with side effects such as loss of peripheral vision, numbness in arms and legs, and slurred speech. <u>Id.</u> The plaintiff alleged that he was subjected to a pattern of harassment, including a coworker's reference to him as "stupid," a coworker's reference to him as a "retard," and being forced to work on certain production lines that were too fast for his capabilities. <u>Id.</u> at 1047. This Court granted summary judgment on the ADA harassment claim, explaining that while the co-workers' conduct "certainly amounted to inexcusable harassment", the plaintiff "cannot show the harassment reached a level of severity or pervasiveness that it objectively affected the terms, conditions, or privileges of his employment." <u>Id.</u> at 1061.

Plaintiff Jenkins alleges that she was subjected to "negative feedback" from her two coworkers with whom she had previously socialized, and that everything between

them was fine until March of 2010 when the physician placed additional work restrictions on her. (Facts ¶¶ 37, 40-41). She alleges that the two coworkers did not respond when she asked them work-related question or that they were "short" with her when answering the questions. (Facts ¶¶ 42-43). She also alleges that the coworkers would slam doors. (Facts ¶ 42). Jenkins alleges that she had a general unease around one of her coworkers (Julie Martin) because she found her to be rude to patients. (Facts ¶ 52). Significantly, Jenkins admits that she never asked to be transferred from the Marion laboratory, and that prior to April 9, 2010, she had never spoken or otherwise communicated with anyone at MedLabs regarding any concerns she may have had regarding her work environment. (Facts ¶¶ 46-47). Even if Jenkins' allegations regarding her coworkers' conduct are taken as true, they do not state a claim of actionable harassment. See Cross v. Prairie Meadows Racetrack and Casino, Inc., 615 F.3d 977, 981 (8th Cir. 2010) (affirming grant of employer summary judgment on Title VII claim when a coworker brushed the back of his hand over the plaintiff's breast, responded in a threatening manner when she rebuffed his request that they be "more than friends," and allegedly spread a rumor that she had performed a sex act); Anderson v. Durham D&M, LLC, 606 F.3d 513, 519 (8th Cir. 2010) (in affirming grant of employer summary judgment on race hostile environment claim, noting that the plaintiff offered "little more than speculation and conjecture" that the name calling, nitpicking, and ridicule had anything to do with the plaintiff's race) (internal citations omitted); Helton v. Southland Racing Corp., 600 F.3d 954, 959-60 (8th Cir. 2010) (in affirming grant of employer summary judgment, observing that the plaintiff "admitted

that she was never physically threatened, that her job was never threatened, and that she was never written up or disciplined as part of the alleged harassment"); O'Brien v. Department of Agriculture, 532 F.3d 805, 810 (8th Cir. 2008) (affirming grant of employer summary judgment on Title VII hostile work environment claim notwithstanding the plaintiff's "frustrating work situation") (internal citations omitted); Sutherland v. Missouri Department of Corrections, 580 F.3d 748, 752 (8th Cir. 2009) (in affirming employer summary judgment on Title VII retaliation claim, explaining that "petty slights and minor annoyance in the workplace, as well as personality conflicts and snubs by coworkers, are not actionable"); Myers v. Croell Redi-Mix, Inc., 672 F. Supp.2d 889, 912 (N.D. Iowa 2009) (in granting employer summary judgment on Title VII hostile work environment claim, explaining that the subject conduct was "certainly inappropriate, rude and distasteful" but not actionable).

Whatever personality conflict developed between the coworkers at the Marion lab, as a matter of law it does not constitute actionable harassment. See Stewart v. General Mills, Inc., 2009 WL 350639 at * 18 (N.D. Iowa 2009) (as a matter of law, "personality conflicts" between coworkers do not constitute harassment).

### III. Jenkins' retaliation claims fail as a matter of law.

Jenkins alleges that her employment was terminated in response to a "report of harassment." (Petition ¶ 22). Jenkins has no direct evidence to support her retaliation claim. See Pye v. Nu Aire, Inc., 641 F.3d 1011, 1020 (8th Cir. 2011) (defining direct evidence of retaliation as "evidence that demonstrates a specific link between a

materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse action was in retaliation for the protected conduct") (internal citations omitted). Therefore, her retaliation claims under the Iowa Civil Rights Act and the ADA must be analyzed under the McDonnell Douglas framework. See Diaz v. Tyson Fresh Meats, Inc., 643 F.3d 1149, 1152 (8th Cir. 2011); Pye v. Nu Aire, Inc., 641 F.3d 1011, 1020 (8th Cir. 2011).

**A.    Jenkins cannot establish a prima facie case of retaliation.**

To establish a prima facie case, the plaintiff must show (1) that she engaged in protected activity, (2) that she suffered an adverse employment action, and (3) the adverse action was causally linked to the protected conduct. Pye, 641 F.3d at 1021; Diaz, 643 F.3d at 1151. As a matter of law, Jenkins cannot meet this burden.

1.    Protected activity.

On the afternoon of April 9, 2010, Jenkins left her work place and drove to MedLabs' facility in downtown Cedar Rapids. (Facts ¶ 66). Jenkins alleges that she informed her supervisor (Kristi Paterson) and MedLab's lab manager (Pat Goehring) that she was upset by the way in which she was being treated by her coworkers Schornhorst and Martin and that when she was asked what she wanted done, she only replied that she wanted Paterson and Goehring to "get their [Shornhorst and Martin's] side of the story." (Facts ¶¶ 70-71). As a matter of law, Jenkins conversation regarding her coworkers' behavior does not constitute protected activity under disability law.

A plaintiff's report of conduct may constitute protected activity only if she could reasonably have believed that the subject conduct constituted prohibited conduct,

17

analyzed in "light of the applicable substantive law." Brannum v. Missouri Dept. of Corrections, 518 F.3d 542, 548-9 (8th Cir. 2008). No person could reasonably have believed that the conduct of Jenkins' two coworkers violated the ADA or Iowa law. See Section II. Thus, Jenkins' alleged "report" of the conduct does not constitute protected activity under disability law. See Clark County School District v. Breeden, 532 U.S. 268 (2001) (affirming employer summary judgment on retaliation claim because no reasonable person could have believed that the subject conduct violated Title VII); Brannum, 518 F.3d at 548-9 (in affirming employer summary judgment on retaliation claim, explaining that the plaintiff could not reasonably have believed that the subject conduct constituted sexual harassment).[4]

2.      Adverse employment action.

The only alleged conduct that may constitute an adverse employment action is the termination of Jenkins' employment. See Section I(A)(2), incorporated herein.

**B.      MedLabs has a legitimate, nondiscriminatory reason for the termination of Jenkins' employment.**

If the plaintiff establishes a prima facie case of retaliation, the defendant must articulate a legitimate, nondiscriminatory explanation. Pye, 641 F.3d at 1021; Diaz, 643 F.3d at 1151. If the defendant offers such an explanation, the plaintiff has the burden to prove pretext. Pye, 641 F.3d at 1021; Diaz, 643 F.3d at 1151. To establish pretext, an employee "must both discredit an employer's asserted reason for [the adverse employment action] and show the circumstances permit drawing a reasonable inference

---

[4] Ms. Jenkins abandoned her patient-care responsibilities to report her concerns in person when other reporting means were readily accessible to her. (Facts ¶ 67). This was viewed as unprofessional and contrary to good patient care practices. (DEF APP 95 - ¶ 10(d) of Darla Spratte Affidavit).

18

that the real reason for [the adverse employment action] was retaliation." Stewart v. General Mills, Inc., 2009 WL 350639 at * 14 (quoting Gilbert v. Des Moines Area Community College, 495 F.3d 906, 911 (8th Cir. 2007)). The "ultimate question" is "whether a prohibited reason, rather than the proffered reason, actually motivated the employer's action." Pye, 641 F.3d at 1021 (internal citations omitted).

MedLabs has a legitimate, nondiscriminatory explanation for the termination of Jenkins' employment. As a matter of law, this explanation is not pretextual. See Section I(B), incorporated herein.

The fact that Jenkins reported alleged misconduct by her coworkers on April 9, 2010 did not "clothe" her with immunity. See Wells v. SCI Management, L.P., 469 F.3d 697, 702 (8th Cir. 2006). Thus, Jenkins' conversation on April 9 did not excuse her from complying with her employer's condition of continued employment that all three coworkers participate with the EAP.

Accordingly, even if Jenkins is deemed to have established a prima facie case, her retaliation claims fail as a matter of law. See Moisant v. Air Midwest, Inc., 291 F.3d 1028, 1032 (8th Cir. 2002) (affirming judgment as a matter of law on Title VII retaliation claim notwithstanding the plaintiff's allegations that some of her co-workers ignored her); LaCroix, 240 F.3d at 692 (affirming summary judgment on retaliation claim, including allegations regarding the supervisor refusing to speak with the plaintiff).

## Conclusion

Jenkins' disability and retaliation claims fail as a matter of law. Summary judgment should be entered in favor of MedLabs on each of Jenkins' claims.

19

Respectfully submitted:

Date: _March 19, 2012_

/s/ Glenn Johnson

GLENN JOHNSON (AT0003856)
NYEMASTER GOODE, PC
625 First Street SE, Suite 400
Cedar Rapids, IA  52401
Telephone:    319.286.7000
Facsimile:    319.286.7050
Email:        gjohnson@nyemaster.com

ATTORNEY FOR DEFENDANT
MEDICAL LABORATORIES OF EASTERN
IOWA, INC.

Copy to:

Matt J. Reilly
EELLS & TRONVOLD LAW OFFICES, P.L.C.
1921 51st Street NE
Cedar Rapids, IA  52402

ATTORNEY FOR PLAINTIFF

---

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of this document was served upon counsel of record for each party to the action in compliance with FRCP 5 on _March 19 2012_

[ x)] Electronically via ECF for ECF registrants
[   ] U.S. Mail
[   ] Fax _____
[   ] Fed Ex _____
[   ] Hand Delivered _____
[   ] other _____

/s/ Glenn Johnson

---

20