# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

JENNIFER S. JENKINS,

        Plaintiff,

vs.

MEDICAL LABORATORIES OF
EASTERN IOWA, INC.,

        Defendant.

No. 11-CV-31-LRR

ORDER

---

## TABLE OF CONTENTS

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **RELEVANT PROCEDURAL HISTORY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.   **SUBJECT MATTER JURISDICTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

IV.   **SUMMARY JUDGMENT STANDARD** . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

V.    **RELEVANT FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . **4**
      A.    *Jenkins's Employment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
      B.    *Jenkins's Injury* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
      C.    *Jenkins's Termination* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
      D.    *Alleged Violations of ADA and Iowa Code Chapter 216* . . . . . . . . . . . . **8**

VI.   **ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
      A.    *Motion to Strike* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
      B.    *Motion for Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
          1.    *Applicable law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
              a.    *ADA and Iowa Code chapter 216* . . . . . . . . . . . . . . . . . . **10**
              b.    *McDonnell Douglas framework* . . . . . . . . . . . . . . . . . . **11**
          2.    *Jenkins's disability discrimination claim* . . . . . . . . . . . . . . **11**
              a.    *Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
              b.    *Direct evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

     *c.* *Prima facie case* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
       *i.* *Disability* . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
       *ii.* *Adverse employment action* . . . . . . . . . . . . . . . . . . **16**
     *d.* *Justification and pretext* . . . . . . . . . . . . . . . . . . . . . . . . **17**
    **2.** *Jenkins's retaliation claim* . . . . . . . . . . . . . . . . . . . . . . . . . **19**
     *a.* *Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**
     *b.* *Direct evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**
     *c.* *Prima facie case* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**
       *i.* *Adverse employment action* . . . . . . . . . . . . . . . . . . **20**
       *ii.* *Protected conduct* . . . . . . . . . . . . . . . . . . . . . . . . **21**
     *d.* *Justification and pretext* . . . . . . . . . . . . . . . . . . . . . . . . **23**
  **C.** **EEOC Letter and Documentation** . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

**VII.** **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**

## I.  INTRODUCTION

The matters before the court are Defendant Medical Laboratories of Eastern Iowa, Inc.'s ("MedLabs") "Motion for Summary Judgment" (docket no. 10) and Plaintiff Jennifer S. Jenkins's ("Jenkins") "Motion to Strike the Affidavit and Testimony of an Undisclosed Witness" ("Motion to Strike") (docket no. 14).

## II.  RELEVANT PROCEDURAL HISTORY

Jenkins maintains that she has exhausted all administrative remedies, and the Equal Employment Opportunity Commission ("EEOC") and the Iowa Civil Rights Commission ("ICRC") have issued her a right to sue letter.  On February 2, 2011, Jenkins filed a Petition at Law ("Complaint") (docket no. 3) in the Iowa District Court for Linn County, case no. LACV71633, claiming that MedLabs violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12213, and Iowa Code chapter 216 when it terminated Jenkins's employment.  On March 11, 2011, MedLabs removed this action on the basis of federal question jurisdiction.  On March 14, 2011, MedLabs filed an Answer (docket no. 5).  On March 19, 2012, MedLabs filed the Motion for Summary Judgment.  On April 19, 2012, Jenkins filed a Resistance (docket no. 13) to the Motion for Summary Judgment.  On the same date, Jenkins filed the Motion to Strike.  On April 30, 2012, MedLabs filed a Resistance (docket no. 15) to

the Motion to Strike.  On May 1, 2012, MedLabs filed a Reply (docket no. 18) to Jenkins's Resistance to the Motion for Summary Judgment.

### III.  SUBJECT MATTER JURISDICTION

The court has federal question jurisdiction over Jenkins's ADA claim. *See* 28 U.S.C. § 1331.  The court has supplemental jurisdiction over Jenkins's state law claim because it is so related to the claim over which the court has federal question jurisdiction that it forms part of the same case or controversy. *See* 28 U.S.C. § 1367(a).

### IV.  SUMMARY JUDGMENT STANDARD

The Eighth Circuit Court of Appeals has found that "[t]here is no 'discrimination case exception' to the application of summary judgment." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011).  "[D]istrict courts should not 'treat discrimination differently from other ultimate questions of fact.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).  As such, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. Daimlerchrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  "[T]o establish the existence of a genuine issue of material fact, '[a nonmoving party] may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)).  Rather, the nonmoving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Id.* (quoting *Bass*, 418 F.3d at 873).  The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *See Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am., Inc.*, 450 F.3d 816, 820 (8th Cir. 2006).

## V.  RELEVANT FACTUAL BACKGROUND

The court construes the facts in the light most favorable to Jenkins.

### A.  Jenkins's Employment

MedLabs consists of a main laboratory and a number of outreach laboratories that are located throughout the Cedar Rapids, Iowa, area.  The outreach laboratories obtain and test bodily samples from walk-in patients who have a physician order for the testing.  Because MedLabs administers care on a walk-in basis only, MedLabs does not know how busy any laboratory could be at any given time.

In August 2007, MedLabs hired Jenkins to work as a Medical Laboratory Technician at the Marion, Iowa, location, one of the outreach laboratories.  Jenkins's work consisted mainly of drawing blood.  Jenkins's direct supervisor at MedLabs was Kristi Paterson, who reported to Pat Goehring.

### B.  Jenkins's Injury

In April 2009, Jenkins injured her back at work and filed a workers' compensation claim based on her injury.  Due to the injury, Jenkins's doctor restricted her from bending and she began to use a stool while working.  On March 8, 2010, Jenkins was restricted to working from a seated position only.  On March 18, 2010, Jenkins's doctor modified her restrictions to allow Jenkins to also work in a standing—but not bending—position.  As a result of these restrictions, Jenkins was prohibited from drawing blood and from doing certain types of testing, which forced her "coworkers to pick up the slack."  Complaint at ¶ 9.

Jenkins admits that MedLabs assisted her in dealing with the third-party administrator for her workers' compensation claim, and that there was no criticism or complaint from MedLabs regarding her use of the stool.  Jenkins further admits that Paterson "was very good about making any necessary inquiries and seeing what she could do to assist with the workers' compensation claim," and that Paterson contacted Jenkins's physician in order to determine the best way to accommodate Jenkins's condition.  Defendant's Statement of Undisputed Material Facts ("Def. Statement of Facts") (docket no. 10-2) at ¶¶ 24, 28; Plaintiff's Response Statement

of Undisputed Facts in Support of Motion for Summary Judgment ("Pl. Response to Def. Statement of Facts") (docket no. 13-2) at ¶¶ 24, 28.

Following the modification of her work restrictions, Jenkins began to perform more of the patient registration function at the Marion location; a job previously performed by Jenkins's coworker, Beth Schornhorst. Jenkins also worked with Julie Martin at the Marion location. Jenkins got along well with her coworkers prior to her doctor's decision to restrict her to only working from the sitting and standing position. However, after the restrictions were put in place, Schornhorst and Martin began to treat Jenkins poorly. Jenkins maintains that Schornhorst and Martin would not speak to her for hours, ignore her work-related questions, snap at her or otherwise be short with her, act like she was not there and look at her in a way that let her know they were upset with her. Jenkins believes that Schornhorst and Martin were upset with her because she was on work restrictions. This work environment made it difficult for Jenkins to do her job, and she would go home at night and cry as a result of her treatment.

### C. Jenkins's Termination

The morning of Friday, April 9, 2010, was particularly tense at the Marion location. Jenkins stated that "Schornhorst slammed doors, slammed drawers, and stomped her feet." Jenkins's Statement of Additional Material Facts ("Pl. Statement of Facts") (docket no. 13-1) at ¶ 27. When Jenkins asked Schornhorst a work-related question, Schornhorst refused to answer it. Following Jenkins's lunch break, she claims that she asked Martin and Schornhorst, "What's going on? Why are you guys so upset with me? You act like I'm not even here. You totally avoid me. You don't answer work-related questions." *Id.* at ¶ 32. Schornhorst then allegedly stood up, walked toward the bathroom and told Jenkins that she was being "extremely selfish." *Id.* at ¶ 33.

Following the incident with Schornhorst, Jenkins left the Marion location and drove to MedLabs's main offices in downtown Cedar Rapids to report the harassment by her coworkers. Jenkins admits that she could have gone outside to her car and used her cellular phone to talk to human resources. However, Jenkins did not believe that there was anywhere at the Marion location where she could have made the complaint in private. MedLabs does not have any

written policy prohibiting employees from reporting harassment in person, and Jenkins believed that it was best that she leave the work environment to report the harassment.

When Jenkins arrived at the Cedar Rapids facility, she asked Paterson if they could meet with Goehring.  In the meeting with Goehring, Jenkins detailed the harassment she felt she had been subjected to since she was put on work restrictions in March.  When Goehring asked Jenkins what she wanted Goehring to do about the situation, she replied that she wanted Goehring and Paterson to "go and get their side of the story."  Def. Statement of Facts at ¶ 71; Pl. Response to Def. Statement of Facts at ¶ 71.  During the meeting, Goehring indicated that she was unhappy that Jenkins had left work during her shift.  At the end of the meeting, Goehring asked Jenkins—who appeared upset—if she would like to go home for the rest of the day; a suggestion that Jenkins accepted and admits was reasonable.  Prior to this meeting, Jenkins had never discussed her concerns regarding the work environment with anyone at MedLabs.

After Jenkins went home, Goehring met with Darla Spratte, who is Schornhorst and Martin's supervisor.  Goehring and Spratte discussed Jenkins's decision to leave the Marion location without notice, and both agreed that it was unprofessional and could compromise patient care.  They considered using the Employee Assistance Program ("EAP") and decided that the "program would be retained to counsel with all three individuals (Jenkins, Schornhorst, and Martin) in an effort to resolve any disputes and return things to normal at the Marion" location.  Def. Statement of Facts at ¶ 77; MedLabs's Appendix in Support of Motion for Summary Judgment (docket 13-3) at 95-96.

On Monday, April 12, 2010, Jenkins returned to work without incident.  On the afternoon of Tuesday, April 13, 2010, Goehring arrived at the Marion location.  Goehring gave Jenkins, Schornhorst and Martin an excerpt from the employee handbook, which stated that MedLabs would not allow any employee to "discriminate, harass, annoy or threaten another employee" and that employees who "feel that they are being mistreated by another employee for any reason needs [sic] to talk to a person in a managerial position, and all such discussions will be held confidential."  Pl. Statement of Facts at ¶ 53.  Goehring then informed them that, "while they

did not need to be friends, they needed to work together professionally to maintain a professional environment for the patients and that they needed to respect one another and communicate in a professional manner." Def. Statement of Facts at ¶ 84. Jenkins concedes that it was appropriate for Goehring to discuss collegiality and professionalism with all three of them.

Goehring and Jenkins then went outside of the laboratory to speak privately. During this private conversation, Jenkins maintains that Goehring told Jenkins that she was concerned about her weight loss, that she believed Jenkins was overmedicated and overly sensitive and that Jenkins needed to meet with the counselor from the EAP to work on interpersonal skills and to "find out why [Jenkins] was so sensitive." Pl. Statement of Facts at ¶ 56. Goehring was not aware at the time that "Jenkins had been doctoring for weight loss" and that Jenkins had been previously diagnosed with an anxiety condition and was suffering from depression. Def. Statement of Facts at ¶ 91. Jenkins alleges that Goehring said that she would have fired Jenkins on Friday, April 9, 2010, if Paterson had not been present.

Jenkins told Goehring that she refused to participate in the EAP. Jenkins viewed the requirement that she attend EAP counseling as retaliation for her decision to report the harassment by her coworkers. Goehring informed Jenkins that participation in the EAP was a condition of continued employment. Jenkins stood fast in her decision not to attend EAP counseling, however, and Goehring told her that she no longer had a position at MedLabs.

Following Jenkins's termination on Tuesday, April 13, 2010, Jenkins's husband, Charlie Jenkins, called Goehring and spoke to her on the phone. Jenkins maintains that, during this conversation, Goehring indicated that she was concerned about Jenkins and told Mr. Jenkins that Jenkins was terminated because "she left work when she should not have." Pl. Statement of Facts at ¶ 66. Goehring then told Mr. Jenkins that she hoped he could convince Jenkins to attend counseling and that she would give Jenkins further time to consider her decision not to participate in the EAP. When Mr. Jenkins asked Goehring why Jenkins needed to participate in the EAP, Goehring indicated that she was concerned about Jenkins and stated that Jenkins "needs to toughen up." Pl. Statement of Facts at ¶ 66. When Goehring called Jenkins at 9:00

p.m. that evening to see if she was willing to reconsider her decision, Jenkins maintained her refusal to attend EAP counseling.

On April 20, 2010, Goehring filled out an Employer Action/Status Form by writing "what code would you use—walked off the job." Pl. Statement of Facts at ¶ 62. On June 30, 2010, Goehring testified under oath at an unemployment hearing that Jenkins was fired for leaving work on Friday, April 9, 2010, and for refusing to participate in the EAP.

After Jenkins's termination, Schornhorst and Martin were required to participate, and did participate, in the EAP. "According to Jenkins, it was not unreasonable for MedLabs to require Schornhorst and Martin to participate in [the] EAP, but the requirement of participation in [the] EAP should have only been directed to Schornhorst and Martin, and not to her." Def. Statement of Facts at ¶ 97; Pl. Response to Def. Statement of Facts at ¶ 97.

### D. Alleged Violations of ADA and Iowa Code Chapter 216

Jenkins believes that, because of her symptoms associated with her back injury and her perceived psychological problems, she was regarded as disabled by MedLabs. Jenkins alleges that, as a result of this perceived disability and in retaliation for Jenkins's decision to report the harassment by her coworkers, MedLabs discharged her. Jenkins contends that MedLabs's actions—including ordering Jenkins to work with the EAP and terminating her employment—violated the ADA and Iowa Code chapter 216. While the Complaint asserts a single claim, MedLabs treats this claim as three separate claims in the Motion for Summary Judgment: a disability discrimination claim, a hostile work environment claim and a retaliation claim. In the Resistance, Jenkins denies asserting a hostile work environment claim, but she otherwise divides her claim into a disability discrimination claim and a retaliation claim.

## VI. ANALYSIS

### A. Motion to Strike

In the Motion to Strike, Jenkins asks the court to strike Donna Spratte's affidavit and testimony. Jenkins argues that the court should strike the affidavit because MedLabs failed to: (1) disclose Spratte in the initial disclosures required by Federal Rule of Civil Procedure 26(a); and (2) identify Spratte in response to Jenkins's interrogatories asking MedLabs to "[i]dentify

all persons known to you to have material knowledge of the facts and issues of this action." Jenkins's Brief in Support of Motion to Strike (docket no. 14-1) at 1. MedLabs concedes that it failed to disclose Spratte. However, MedLabs argues that it was "substantially justified in not including . . . Spratte's name in the initial disclosures or answers to interrogatories," and "[t]he fact that . . . Spratte's name was not included in the initial disclosures or answers to interrogatories is not prejudicial." Resistance to Motion to Strike at 4.

When a party fails to disclose a witness properly, the court "may exclude the . . . testimony . . . unless the party's failure to comply is substantially justified or harmless." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). In making this determination, the court should consider, among other things, "the reason for noncompliance, the surprise and prejudice to the opposing party," the nature of the testimony and the severity of the sanction. *Id.* "'[T]he exclusion of evidence is a harsh penalty and should be used sparingly.'" *Id.* (quoting *ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 190 (8th Cir. 1995)).

Having examined the facts in this case, the court finds that MedLabs's failure to comply is substantially justified and harmless. MedLabs states that it mistakenly believed that Paterson supervised all of the lab personnel at the Marion location and, therefore, did not realize that Spratte had material knowledge until after the applicable deadline. There is no reason to believe that MedLabs omitted Spratte in bad faith. Further, allowing the testimony of Spratte will not result in any surprise or prejudice to Jenkins. Spratte was identified during three depositions that Jenkins took, and Jenkins had a sufficient opportunity to depose Spratte following her identification. Furthermore, Jenkins has failed to argue—or make any showing—that an earlier disclosure of Spratte would have enabled her to more efficiently resist the Motion for Summary Judgment. *See Davis v. U.S. Bancorp*, 383 F.3d 761, 765 (8th Cir. 2004). Accordingly, the court shall deny the Motion to Strike.

### B. Motion for Summary Judgment

#### 1.   Applicable law

#### a.      ADA and Iowa Code chapter 216

The ADA—including changes made in the ADA Amendments Act of 2008[1] ("ADAAA")—prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Similarly, the Iowa Civil Rights Act ("ICRA"), Iowa Code chapter 216, states:

> It shall be an unfair or discriminatory practice for any . . . [p]erson to refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, or to otherwise discriminate in employment against any applicant for employment or any employee because of the . . . disability of such applicant or employee, unless based upon the nature of the occupation.

Iowa Code § 216.6(1).

Before the ADAAA became effective, the Eighth Circuit and the Iowa Supreme Court both found that "'ADA and ICRA disability claims are analyzed under the same standards.'" *Magnussen v. Casey's Mktg. Co.*, 787 F. Supp. 2d 929, 941 (N.D. Iowa 2011) (quoting *Tjernagel v. Gates Corp.*, 533 F.3d 666, 671 (8th Cir. 2008)); *see also Seim v. Three Eagles Commc'ns, Inc.*, No. 09-CV-3071-DEO, 2011 WL 2149061, at *2 nn.4-5 (N.D. Iowa June 1, 2011) (analyzing ADAAA and ICRA disability claims under the same standards). Therefore, the court's discussion of Jenkins's ADAAA claims applies equally to her ICRA claims.[2]

---

[1] The ADA Amendments Act of 2008 applies to claims arising from acts occurring after the amendments became effective on January 1, 2009. *See Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 734 n.4 (8th Cir. 2010).

[2] Although the court recognizes that the ADA has been partially amended by the ADAAA, for ease of reading, the court will refer only to the ADA. The court will, however, incorporate the amendments in its analysis where applicable.

### b.    McDonnell Douglas *framework*

Jenkins can survive MedLabs's Motion for Summary Judgment on her disability discrimination and retaliation claims by either: (1) presenting proof of direct evidence of discrimination; or (2) "creating the requisite inference of unlawful discrimination" under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004); *accord Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1020 (8th Cir. 2011).[3] Under the *McDonnell Douglas* framework, Jenkins has the initial burden of establishing a prima facie case of discrimination or retaliation. *Rehrs v. Iams Co.*, 486 F.3d 353, 356 (8th Cir. 2007); *Pye*, 641 F.3d at 1021. If Jenkins establishes a prima facie case, "[t]he burden then shifts to [MedLabs] to articulate some legitimate, nondiscriminatory reason for [its] actions." *Rehrs*, 486 F.3d at 356; *accord Pye*, 641 F.3d at 1021. "If [MedLabs] articulates such a reason, the burden returns to [Jenkins] to show that [MedLabs's] justification is a pretext." *Rehrs*, 486 F.3d at 356; *accord Pye*, 641 F.3d at 1021.

### 2.    *Jenkins's disability discrimination claim*

### a.    *Claim*

In the Complaint, Jenkins states that, due to "symptoms *associated with her back injury* and her perceived psychological problems, [Jenkins] was regarded as being disabled" and, as a result of this "perceived disability, and in response to and in retaliation for [Jenkins's] report of harassment," she was discharged. Complaint at ¶¶ 21-22 (emphasis added). However, in

---

[3] The Eighth Circuit has continually found that discrimination and retaliation claims brought under the ADA and Title VII—which prohibits employment discrimination against an individual based on his or her race, color, religion, sex or national origin—are analyzed according to the same framework. *See Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1042-43 (8th Cir. 2007) ("Without direct evidence of a retaliatory motive, we analyze retaliation claims (whether under Title VII, the ADA, or the ADEA), under the [*McDonnell Douglas*] burden-shifting framework . . . ."); *Kincaid v. City of Omaha*, 378 F.3d 799, 806 (8th Cir. 2004) (stating that the plaintiff's ADA and Title VII discrimination claims were analyzed under the same *McDonnell Douglas* framework). Accordingly, the court shall focus on cases using this framework, even though not necessarily raised under the ADA.

the Resistance to the Motion for Summary Judgment, Jenkins focuses solely on her contention that MedLabs perceived her as having a mental impairment due to perceived psychological problems.  She does not argue or provide additional facts supporting her original contention that the symptoms associated with her back injury also contributed to a perceived disability.  She also fails to argue that her previous anxiety diagnosis and other psychological issues contributed to any perceived disability.

The court finds that the facts do not support a claim that MedLabs discriminated against Jenkins based on her back injury or her previous anxiety diagnosis.  Jenkins admits that MedLabs and Paterson accommodated her back injury and helped her with her workers' compensation claim.  While Jenkins's treatment by her coworkers following her injury may arguably support a hostile work environment claim, Jenkins states that she "did not assert a hostile work environment claim and has no idea why MedLabs devoted over a quarter of its brief to this claim."  Resistance to Motion for Summary Judgment at 14.  Jenkins also admits that MedLabs was unaware in April 2010 that she had been previously diagnosed with an anxiety condition and was suffering from depression.  This court has previously found that "[d]isability discrimination claims cannot be based on impairments that the employer knew nothing about, because an employer cannot intentionally discriminate on the basis of an impairment it knows nothing about."  *Magnussen*, 787 F. Supp. 2d at 947.  For these reasons, the court will focus its analysis on Jenkins's asserted claim that MedLabs discriminated against Jenkins due to a perceived mental disability.

### b.    *Direct evidence*

Direct evidence of discrimination is "evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated'" the adverse employment action.  *Griffith*, 387 F.3d at 736 (quoting *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 65-66 (8th Cir. 1997)).  Direct evidence "most often comprises remarks by decisionmakers that reflect, without inference, a discriminatory bias."  *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 861 (8th Cir. 2009).

In the Resistance to the Motion for Summary Judgment, Jenkins points to two occasions on which she believes Goehring made statements that were direct evidence of discrimination. The first occurred when Goehring told Jenkins that she was being overly sensitive and needed counseling to work on her interpersonal skills and find out why she was so sensitive. Then, later that night, Goehring spoke to Jenkins's husband on the phone and told him that Jenkins "needed to toughen up."[4]   Resistance to Motion for Summary Judgment at 10.

The court finds that these statements do not show a discriminatory motive on their face. *See* 45C Am. Jur. 2d *Job Discrimination* § 2384 (2012) ("[D]irect evidence of discriminatory intent . . . is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption."). Goehring never mentioned Jenkins's injured back or referred directly to any actual or perceived mental disability of Jenkins. A factfinder would not be able to determine that this evidence reflects Goehring's discriminatory bias against Jenkins without making two major inferences: (1) that Goehring's statements reflect her belief that Jenkins was mentally disabled; and (2) that these statements

---

[4] The court does not consider—here or elsewhere in this order—Jenkins's contention that "Goehring indicated that she viewed [Jenkins's] reporting the harassment as a symptom of mental illness." Resistance to Motion for Summary Judgment at 10. The only evidence Jenkins offers in support of this assertion is Jenkins's response to a leading question:

> Q.   Okay; and did it appear to you when Pat was—did it appear to you that Pat viewed your—did she give indication that she viewed your reporting harassment as a symptom of mental illness?
>
> A.   Yes
>
> [Defense Counsel]: Object to the form; leading.

Jenkins's Appendix in Support of Resistance to Motion for Summary Judgment (docket no. 13-3) at 33. The court finds that this self-serving answer to an inadmissible leading question does not create a genuine issue of material fact on its own. *See Mosley v. City of Chi.*, 614 F.3d 391, 398 (7th Cir. 2010) (finding that a one word answer to a leading question during cross-examination does not create a genuine issue of material fact when interpreted in light of other evidence); Fed. R. Evid. 611(c) ("Leading questions should not be used on direct examination . . . ."); Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

show that this belief motivated Goehring's decision to terminate Jenkins. As such, this evidence must be analyzed according to the *McDonnell Douglas* framework.

### c.      Prima facie case

To establish a prima facie case of disability discrimination, Jenkins must show that she: "(1) had a disability within the meaning of the ADA; (2) was qualified, with or without reasonable accommodation, to perform the essential job functions of the position in question; and (3) suffered an adverse employment action because of [her] disability." *Rehrs*, 486 F.3d at 356.

### i.      Disability

Under the ADA, the definition of disability includes "being regarded as having such an impairment."[5]  42 U.S.C. § 12102(1)(C). "An individual meets the requirement of 'being regarded as having such an impairment' if [she] establishes that [she] has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity," as long as the impairment is not transitory or minor. *Id.* § 12102(3)(A)-(B). "The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." *Id.* § 12102(4)(A).

Even construing the definition of disability in favor of broad coverage, the court finds that Jenkins failed to set forth any facts establishing that MedLabs subjected Jenkins to an action prohibited by the ADA because of a perceived disability. *See Webb v. Mercy Hosp.*, 102 F.3d 958, 960 (8th Cir. 1996) ("On a motion for summary judgment, the nonmoving party must set forth specific facts sufficient to raise a genuine issue for trial.").

Jenkins failed to show that employer-required EAP counseling is an action prohibited by the ADA. In the Resistance to the Motion for Summary Judgment, Jenkins attempts to categorize EAP counseling as "mental health counseling." Resistance to Motion for Summary

---

[5] As stated above, Jenkins does not argue that 42 U.S.C. § 12102(1)(A) or (B)—which state that the term disability also includes "a physical or mental impairment that substantially limits one or more life activities of such individual" and "a record of such an impairment"—are applicable in this case.

Judgment at 12-14.  However, the required EAP counseling was dispute resolution counseling intended to understand and resolve the personality conflicts occurring at the Marion location. This type of counseling does not fall under the ADA's prohibition on medical examinations and "inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability."  42 U.S.C. § 12112(d)(4)(A).  Jenkins also fails to show that she was sent to EAP counseling because of a perceived disability.  Schornhorst and Martin—the only other workers involved in the dispute—were also required to work with the EAP.  Jenkins admits that it was not unreasonable for MedLabs to have her coworkers attend EAP counseling, but she maintains that she should have been exempt from the requirement. Accordingly, the court finds that Jenkins has failed to set forth facts establishing that she was sent to EAP counseling due to a perceived disability or that any aspect of EAP counseling qualifies as an action prohibited by the ADA.

The court also finds that Jenkins failed to establish facts supporting her contention that her termination was the result of a perceived disability.  Jenkins was told that her continued employment was contingent on her working with the EAP.  After her initial refusal, Jenkins was given further time to reconsider her decision, but she maintained her refusal.  Of the three coworkers, Jenkins was the only one who refused to fulfill the required EAP counseling.  The court finds that these facts do not support Jenkins's assertion that she was terminated as a result of a perceived mental illness.  Instead, the facts demonstrate that MedLabs conditioned Jenkins's continued employment on working with the EAP,[6] and she was terminated due to her continued refusal to fulfill this condition.

Because Jenkins failed to show that she was subjected to an action prohibited under the ADA due to a perceived disability, she cannot establish that MedLabs regarded her as having such an impairment.  Accordingly, she cannot demonstrate a prima facie case of disability discrimination.  For these reasons, the court shall grant summary judgment to MedLabs on Jenkins's disability discrimination claim.

---

[6] A requirement that did not violate the ADA and, as will be discussed below, cannot be viewed as an adverse employment action.

### ii.     Adverse employment action

Even if Jenkins fit the definition of "disabled" under the ADA, summary judgment is appropriate under the remaining *McDonnell Douglas* factors. As MedLabs does not contend that Jenkins was unable to perform the essential job functions of the position in question, the court will move to the question of whether Jenkins was subjected to an adverse employment action.

In *Wilkie v. Department of Health & Human Services*, the Eighth Circuit defined an adverse employment action as:

> a tangible change in working conditions that produces a material employment disadvantage. This might include termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge. Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action.

638 F.3d 944, 955 (8th Cir. 2011) (quoting *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 926 (8th Cir. 2007)). MedLabs admits that Jenkins's termination is an adverse employment action but resists Jenkins's contention that the requirement to attend EAP counseling qualifies as an adverse employment action.

The court finds that a requirement to attend EAP counseling does not constitute a "tangible change in working conditions that produces a material employment disadvantage." *Id.* Jenkins's pay, benefits, work duties, work conditions and career prospects are unaffected by any requirement that she attend EAP counseling. EAP counseling was only a temporary requirement. *See* 45A Am. Jur. 2d *Job Discrimination* § 237 ("[T]here is no adverse action based on temporary even if undesired rotations and assignments."). Jenkins admits it was reasonable for Schornhorst and Martin to attend EAP counseling. The fact that she found the requirement that she also participate in the EAP to be unwelcome does not raise it to the level of an adverse employment action.

For these reasons, the court finds that the only adverse employment action that Jenkins endured was her termination.

### d.       Justification and pretext

If Jenkins had established a prima facie case, then the burden would shift "to [MedLabs] to articulate some legitimate, nondiscriminatory reason for [its] actions." *Rehrs*, 486 F.3d at 356. If MedLabs presented a legitimate, nondiscriminatory reason for its actions, the burden would return to Jenkins to show that MedLabs's justification is only a pretext for discrimination. *Id.* The Eighth Circuit has found that in order to show that an articulated reason is a pretext for disability discrimination:

> [A] plaintiff must present sufficient evidence to demonstrate both
> that the employer's articulated reason for the adverse employment
> action was false and that discrimination was the real reason . . . .
> [T]he plaintiff must do more than simply create a factual dispute as
> to the issue of pretext; [she] must offer sufficient evidence for a
> reasonable trier of fact to infer discrimination.

*Magnussen*, 787 F. Supp. 2d at 952 (quoting *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008)). "More specifically, the plaintiff 'must demonstrate that a discriminatory animus lies behind the defendants' neutral explanations." *Id.* (quoting *McNary*, 535 F.3d at 769).

Jenkins's failure to comply with MedLabs's condition of continued employment that she attend EAP counseling is a legitimate, nondiscriminatory reason for Jenkins's termination. *See Walton v. City of Manassas*, 162 F.3d 1158, 1998 WL 545895, at *2 (4th Cir. July 28, 1998) (table) (per curiam); *Hogan v. Cox Commc'ns, L.L.C.*, No. 8:04cv368, 2005 WL 3358922, at *5 (D. Neb. Dec. 9, 2005) (holding that the plaintiff's failure to comply with the EAP was a nondiscriminatory reason for his termination). "Employers are permitted 'to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims.'" *Wisbey v. City of Lincoln, Neb.*, 612 F.3d 667, 673 (8th Cir. 2010) (quoting *Cody v. CIGNA Healthcare of St. Louis, Inc.*, 139 F.3d 595, 599 (8th Cir. 1998)) (finding that a fitness-for-duty exam was a reasonable way of determining if the plaintiff was able to adequately perform her job as an emergency dispatcher), *abrogated on other grounds by Torgerson*, 643 F.3d at 1058. MedLabs states that it required Jenkins, Martin and Schornhorst to participate in the EAP in order to resolve any disputes between the coworkers. In light of the nature of the

Marion location as a patient care center, it was reasonable for MedLabs to use the EAP to determine the cause of a dispute between coworkers that had already led to one worker leaving work in the middle of her shift. Jenkins was the only employee who refused to comply with the required EAP counseling, and it is not the province of the court to second-guess MedLabs's decision to terminate her employment based on her noncompliance. *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995) ("[E]mployment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.").

Jenkins attempts to establish that MedLabs's asserted reason for termination is only a pretext for discrimination by arguing that: (1) MedLabs did not show that EAP counseling was a business necessity as required by the ADA prohibition against medical examinations and inquiries; and (2) MedLabs's shifting reasons for terminating Jenkins would allow a jury to infer that she was terminated for an improper reason. Jenkins's first argument fails because—as noted above—EAP counseling cannot be classified as a medical examination or inquiry.

The Eighth Circuit has stated that, while "[s]ubstantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext, this does not mean that an employer cannot elaborate on its proffered reason." *Elam v. Regions Fin. Corp.*, 601 F.3d 873, 881 (8th Cir. 2010) (quoting *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 855 (8th Cir. 2005), *abrogated on other grounds by Torgerson*, 643 F.3d at 1058)) (internal quotation marks omitted). MedLabs has consistently stated that Jenkins was terminated for refusing to attend EAP counseling. Goehring informed Jenkins that her continued employment was conditioned on attending EAP counseling. Even after Jenkins's initial refusal, Goehring gave her a chance to reconsider her decision and keep her job provided that she attend EAP counseling. Goehring's statements that Jenkins's decision to leave work on Friday, April 9, 2010, also contributed to her termination do not represent a substantial change in MedLabs's proffered reasoning. Instead, these statements elaborate on MedLabs's constantly proffered reasoning by establishing the rationale behind MedLabs's decision to require Jenkins to attend

EAP counseling; namely that the personality conflicts at MedLabs escalated past a point where they could be dealt with in another way.

Alternatively, even if the shifting reasons create a factual dispute as to the issue of pretext, Jenkins still failed to demonstrate that discrimination was the real reason for the termination. Goehring's statements are not evidence sufficient to allow a reasonable trier of fact to infer discrimination in the face of MedLabs's consistent treatment of all employees involved in the dispute and MedLabs's articulated reason for the adverse employment action. *See Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 881 (8th Cir. 2005) ("[A]n employee's attempt to prove pretext requires more substantial evidence than it takes to make a prima facie case, because unlike evidence establishing a prima facie case, evidence of pretext and retaliation is viewed in light of the employer's justification." (quoting *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002))) (internal marks omitted).

Therefore, MedLabs is also entitled to summary judgment on Jenkins's disability discrimination claim on the ground that she failed to create a genuine issue of material fact that MedLabs's stated reason for her termination is a pretext for discrimination.

### 2.    *Jenkins's retaliation claim*

#### a.    *Claim*

Jenkins also claims that MedLabs discharged her in retaliation for reporting the harassment by her coworkers in violation of the ADA. *See* 42 U.S.C. § 12203(a); Iowa Code § 216.11. The ADA's prohibition against retaliation states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation." 42 U.S.C. § 12203(a); *see also* Iowa Code § 216.11.

#### b.    *Direct evidence*

"Direct evidence of retaliation is evidence that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse action was in retaliation for the protected conduct." *Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 912 (8th Cir. 2011).

"'Direct' refers to the causal strength of the proof, not whether it is 'circumstantial' evidence." *Id.* (quoting *Griffith*, 387 F.3d at 736). Jenkins contends that Goehring's statements indicating that Jenkins was fired for leaving the work site on April 9, 2010, are direct evidence of retaliation.

The court finds that there is no direct evidence of retaliation because—as will be discussed below—Jenkins did not engage in protected conduct. Alternatively, even if Jenkins engaged in protected conduct, Goehring's statements are not direct evidence of retaliation. Goehring never said that Jenkins's decision to report the harassment by her coworkers played a role in her decisionmaking process. Instead, Goehring made it clear that it was Jenkins's decision to walk off the job during the middle of her shift that upset Goehring and played a role in her decision to require the coworkers to attend EAP counseling. *See* Pl. Statement of Facts at ¶ 69. Goehring's statements do not establish a specific link between Jenkins's report and her ultimate termination.

### c.   *Prima facie case*

To establish a prima facie case of retaliation, Jenkins must show that: "(1) [she] engaged in protected conduct, (2) [she] suffered a materially adverse employment action, and (3) the adverse action was causally linked to the protected conduct." *Pye*, 641 F.3d at 1021. Because MedLabs does not contend that Jenkins failed to establish a causal link between the adverse action and the protected conduct, the court will assume that Jenkins has fulfilled her burden of establishing this requirement.

### i.   *Adverse employment action*

"In [*Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 66-67 (2006)], the [Supreme Court of the United States] expressly held that retaliation claims . . . need not be based solely on discrete adverse employment actions that affect the terms or conditions of employment." *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1042 (8th Cir. 2007). Instead, "[t]he Court held that actions are considered materially adverse . . . if the actions 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N.*, 548 U.S. at 68). Jenkins argues that, if she had

"known that reporting harassment would have triggered an obligation to obtain counseling, she would have been less likely to have reported the harassment." Pl. Statement of Facts at ¶ 64.

The court finds that MedLabs's requirement that Jenkins attend EAP counseling with her coworkers would not dissuade a reasonable worker from making a charge of discrimination. There has been no showing that EAP counseling would affect Jenkins's pay, benefits, work duties, work conditions or career prospects. Jenkins was not singled out to attend EAP counseling. All three coworkers involved in the dispute were required to attend EAP counseling in order to resolve the personality conflicts at the Marion location. Jenkins admits that "it was not unreasonable for MedLabs to require Schornhorst and Martin to participate in [the] EAP, but the requirement of participation in [the] EAP should have only been directed to Schornhorst and Martin, and not to her." Def. Statement of Facts at ¶ 97; *see also* Pl. Response to Def. Statement of Facts at ¶ 97. As mentioned before, the mere fact that Jenkins found the requirement that she also participate in the EAP to be unwelcome does not raise it to the level of an adverse employment action. Accordingly, the only adverse employment action Jenkins endured was her termination.

### ii. *Protected conduct*

Jenkins contends that when she reported the harassment by her coworkers she engaged in protected conduct. Under the ADA's retaliation clause, Jenkins does not have to establish that the harassment she reported was in fact prohibited under the ADA. 42 U.S.C. § 12203(a); *see also Brannum v. Mo. Dep't of Corr.*, 518 F.3d 542, 547 (8th Cir. 2008). Instead, Jenkins must prove that she "had a good faith, reasonable belief that the underlying challenged conduct violated" the ADA. *Id.* (quoting *Bakhtiari v. Lutz*, 507 F.3d 1132, 1137 (8th Cir. 2007)) (internal quotation mark omitted). The reasonableness of Jenkins's asserted belief must be analyzed "in light of the applicable substantive law." *Id.* at 549; *see also Barker v. Mo. Dep't. of Corr.*, 513 F.3d 831, 835 (8th Cir. 2008) (stating that the plaintiff must "demonstrate that he had an objectively reasonable belief" that the reported conduct constituted harassment). Jenkins argues that she reasonably believed that her coworkers' daily harassment violated the ADA's prohibition against workplace harassment. Therefore, while Jenkins does not bring an

independent hostile work environment claim, her retaliation claim hinges on whether or not she can establish that her coworkers' harassment was severe enough to support the objective reasonableness of her belief that she was reporting an unlawful hostile work environment.

In *Shaver v. Independent Stave Co.*, the Eighth Circuit held that, in order for a hostile work environment claim brought under the ADA to be actionable, the "harassment must be both subjectively hostile or abusive to the victim and 'severe and pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive.'" *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 721 (8th Cir. 2003) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)).   The Eighth Circuit emphasized that "anti-discrimination laws do not create a general civility code," and "[c]onduct that is merely rude, abrasive, unkind, or insensitive does not come within the scope of the law." *Id.*  "Relevant factors for determining whether conduct rises to the level of harassment include the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance.'"  *Pye*, 641 F.3d at 1018 (quoting *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005)).

In *Shaver*, part of the plaintiff's brain had been replaced by a metal plate to help treat his nocturnal epilepsy.  *Shaver*, 350 F.3d at 719.  After being fired from his job at a timber mill, the plaintiff brought a hostile work environment claim.  *Id.*  The evidence showed that the plaintiff's "co-workers referred to him as 'platehead' over a period of about two years," that "[s]everal co-workers suggested that [the plaintiff] was stupid" and that, outside of the plaintiff's presence, one co-worker said that the plaintiff "pissed his pants when the microwave was on." *Id.* at 721.  The Eighth Circuit found that this harassment did "not rise to the same level as that in cases where we have granted relief." *Id.*  In coming to its conclusion, the Eighth Circuit noted that the plaintiff had not presented any evidence that: (1) the harassment was so severe that it resulted in any psychological treatment, (2) the harassment involved statements—such as death threats—that were "explicitly or implicitly" threatening or (3) the harassment included the physical harassment of the plaintiff.  *Id.* at 722.

In light of the Eighth Circuit's restrictive approach toward hostile work environment claims, the court finds that Jenkins failed to establish the objective reasonableness of her belief that she was subjected to a hostile work environment. Jenkins's coworkers did not tease or ridicule her, make explicitly or implicitly threatening statements toward Jenkins or physically harass Jenkins in any way. Rather, Jenkins alleges that her coworkers gave her the silent treatment, acted annoyed with her, failed to answer questions, acted like they did not want her to be around and occasionally slammed doors. The court finds that a reasonable person could not find that this behavior was anything more than rude, abrasive, unkind or insensitive. Accordingly, the court finds that Jenkins did not engage in protected conduct and cannot establish a prima facie case of retaliation.

### d. Justification and pretext

Even if Jenkins had established a prima facie case of retaliation, she failed to show that MedLabs's legitimate, nonretaliatory reason for Jenkins's termination was a pretext for unlawful retaliation. For the reasons discussed previously, MedLabs's stated reason for terminating Jenkins—her refusal to attend EAP counseling—is a legitimate, nonretaliatory reason for the adverse employment action. Jenkins has the burden of presenting "evidence that (1) creates a question of fact as to whether [MedLabs's] reason was pretextual and (2) creates a reasonable inference that [MedLabs] acted in retaliation." *Stewart*, 481 F.3d at 1043 (quoting *Logan*, 416 F.3d at 880) (internal quotation mark omitted).

As discussed above, MedLabs's "shifting" reasons for Jenkins's termination do not establish pretext. Alternatively, even if the shifting reasons create a factual dispute as to the issue of pretext, Jenkins has failed to create a reasonable inference that MedLabs acted in retaliation for her report of harassment. Goehring's statements are not evidence sufficient to allow a reasonable trier of fact to infer retaliation in the face of MedLabs's consistent treatment of all employees involved in the dispute and its articulated reason for the adverse employment action. *See Logan*, 416 F.3d at 881 ("[A]n employee's attempt to prove pretext requires more substantial evidence than it takes to make a prima facie case, because unlike evidence

establishing a prima facie case, evidence of pretext and retaliation is viewed in light of the employer's justification." (quoting *Smith*, 302 F.3d at 834) (internal marks omitted)).

Therefore, MedLabs is also entitled to summary judgment on the ground that Jenkins failed to create a genuine issue of material fact that MedLabs's stated reason for her termination was a pretext for retaliation.

### C. EEOC Letter and Documentation

The Eighth Circuit has stated:

> "In determining whether an alleged discriminatory act falls within the scope of a [discrimination] claim, the administrative complaint must be construed liberally 'in order not to frustrate the remedial purposes of [the ADA and the ADEA]' and the plaintiff may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 886-87 (8th Cir. 1998) (citations and internal citation omitted). "Accordingly, the sweep of any subsequent judicial complaint may be as broad as the scope of the EEOC 'investigation which could reasonably be expected to grow out of the charge of discrimination.'" *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1988) (citation omitted). Allegations outside the scope of the EEOC charge, however, circumscribe the EEOC's investigatory and conciliatory role, and for that reason are not allowed. *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994) (citation omitted).

*Kells v. Sinclair Buick-GMC Truck, Inc.*, 210 F.3d 827 (8th Cir. 2000), *abrogated on other grounds by Torgerson*, 643 F.3d at 1059 (alterations in original) (internal citation altered).

While Jenkins alleges that the EEOC issued her a right to sue letter, the record does not contain a copy of that letter or of any of Jenkins's EEOC or ICRC charges. Because Jenkins failed to provide the court with the EEOC record, the court cannot conclusively determine whether Jenkins's claim is within the scope of the EEOC charge. The court finds that this is an additional reason for dismissal.

### VII.  CONCLUSION

In light of the foregoing, **IT IS HEREBY ORDERED THAT**:

(1)     Plaintiff Jennifer S. Jenkins's Motion to Strike (docket no. 14) is **DENIED**;

(2)     Defendant Medical Laboratories of Eastern Iowa Inc.'s Motion for Summary Judgment (docket no. 10) is **GRANTED**;

(3)     The Clerk of Court is **DIRECTED TO SATISFY ALL OTHER PENDING MOTIONS AS MOOT**; and

(4)     The Clerk of Court is **DIRECTED TO CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**DATED** this 20th day of July, 2012

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA